ReIN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ERN REYNOLDS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WELLS FARGO HOME MORTGAGE, )<br>)<br>Defendant. ) | <br><br><br><br>Civil Action No. 7:19-cv-00799<br><br>By:  Elizabeth K. Dillon<br>     United States District Judge |

## **MEMORANDUM OPINION**

This matter is before the court on defendant Wells Fargo Bank, N.A.'s[1] (Wells Fargo) motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 3) and a number of subsequent motions filed by *pro se* plaintiff Ern Reynolds.[2]  Reynolds filed his complaint in this court on November 29, 2019, asserting claims of breach of contract, fraud, a violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, and a violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*[3]  (Compl., Dkt. No. 1.)  Wells Fargo filed its motion to dismiss on December 23, 2019.  Since Wells Fargo filed its motion to dismiss, Reynolds has filed a motion for more definite statement asking the court to

---

[1] The complaint names "WELLS FARGO HOME MORTGAGE a wholly owned subsidiary of Wells Fargo Bank, N.A." as the defendant.  In its motion to dismiss, Wells Fargo notes that Reynolds incorrectly named it as Wells Fargo Home Mortgage and that the proper defendant is Wells Fargo Bank, N.A.  Reynolds has filed a motion for more definite statement requesting an additional Rule 7.1 disclosure statement with information clarifying Wells Fargo Home Mortgage's relationship to Wells Fargo Bank, N.A.  (Dkt. No. 9.)  The court need not reach the merits of Reynolds' motion for more definite statement, but notes that throughout Reynolds' pleadings and motions, Reynolds has attached exhibits that state, "Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A."  (*See, e.g.*, Dkt. No. 17-1.)

[2] Although Reynolds proceeds *pro se*, he states in his praecipe that he is an attorney licensed to practice in the District of Columbia.  (Dkt. No. 14.)

[3] Reynolds does not allege a basis for subject matter jurisdiction.  However, the court notes that Reynolds' claims arising under the FDCPA and FCRA establish jurisdiction pursuant to 28 U.S.C. § 1331.  The court has supplemental jurisdiction over Reynolds' remaining claims pursuant to 28 U.S.C. § 1367.

direct Wells Fargo Home Mortgage to file a disclosure statement pursuant to Federal Rule of Civil Procedure 7.1 (Dkt. No. 9), a praecipe requesting the Clerk of Court schedule him for training on the court's PACER and CM/ECF systems (Dkt. No. 14), a motion requesting the court to take "heightened judicial notice" of an article from the *Wall Street Journal* and certain inferences Reynolds draws from that article (Dkt. No. 18), and a motion to seek a loan guarantee from Wells Fargo (Dkt. No. 20). Reynolds has also filed two additional memoranda of law.[4] (Dkt. Nos. 22, 23.) For the reasons stated below, the court will grant Wells Fargo's motion to dismiss and will therefore deny Reynolds' motions as moot.

I.  BACKGROUND

On October 16, 2007, Reynolds obtained from Wachovia Bank a mortgage loan to finance the purchase of real property in Roanoke, Virginia. The property consists of a multifamily house, portions of which Reynolds leases to tenants and a portion of which serves as Reynolds' principal residence. Reynolds signed the Deed of Trust as Trustee on behalf of the Reynolds Living Trust (the Trust), a trust created by Reynolds' parents' estate plan. Wells Fargo later obtained rights to the mortgage Note and Deed of Trust through its acquisition of Wachovia Bank.  (*Id.* ¶¶ 1–3.)

---

[4] While Wells Fargo's motion was pending, Congress passed the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. 116-136 (CARES Act). In his memorandum of controlling law, Reynolds asserts that "the CARES Act . . . became the fresh supplementary underpinning for the 'law of this case' effective March 27, 2020." (Dkt. No. 23.) Reynolds cites § 4022 of the Act, which governs requests for forbearance. But that section allows a borrower to request forbearance if he is experiencing financial hardship due to the COVID-19 emergency. Notably, Reynolds' application for HAMP protection occurred in 2019 before COVID-19 reached the United States. Thus, Reynolds does not, and likely cannot, allege that his requested HAMP modification or subsequent default were caused directly or indirectly by the COVID-19 emergency. To the extent that he now wishes to obtain such forbearance, he must follow the procedure outlined in the CARES Act. Reynolds memoranda do not identify any portion of the CARES Act that changes the court's analysis regarding the complaint and motion to dismiss currently before the court. Likewise, his motion requesting the court take judicial notice of certain facts does not support his opposition to Wells Fargo's motion.

2

In early July 2019, one of Reynolds' long-time tenants died. The tenant had paid rent for July, but Reynolds notes that "removing her tightly-packed belongings might need to await drawn-out probate court administration beyond July 31st." The unit also needed renovations after the tenant's ten-year occupancy. Reynolds learned of the tenant's death on July 7. (*Id.* ¶¶ 9–10.)

The next day, Reynolds spoke to a Wells Fargo representative about a deferment under the Home Affordable Modification Program (HAMP), which was designed to enable borrowers to avoid foreclosure through loan modifications if the borrowers meet eligibility requirements. According to Reynolds, qualification for HAMP would allow him to defer his monthly payments for up to ninety days, with the three suspended payments being added to the end of the mortgage term. Wells Fargo informed Reynolds that its HAMP criteria included: (1) the borrower made a full payment for the prior month; (2) the borrower made a full payment for the months following the deferment; (3) no homeowner's association fee is due; (4) the property securing the mortgage is not in a flood plain; and (5) the property has not been involved in a natural disaster. Reynolds alleges that he satisfied these criteria. (*Id.* ¶¶ 5–7, 10.)

During the July 8 phone call, Reynolds sought to invoke HAMP protections and defer his mortgage for ninety days. He requested that Wells Fargo defer payments for July, August, and September, "with acknowledgement of the deferment being granted by . . . suspending the July 15th, August 15th, and September 15th autodebits from the Wells Fargo RLT Management checking account, and restart set for October 15th, 2019." Wells Fargo notified Reynolds on July 11 that his automatic withdrawals had been paused. Reynolds alleges that when he was notified that the withdrawals were paused, he believed the deferment under HAMP had been granted. (*Id.* ¶¶ 8, 11–13.) Notably, however, Reynolds further alleges that as late as November

3

17, 2019, he still had not received a decision about his application to defer his mortgage payments.  (*Id.* ¶¶ 7, 26.)

On September 18, Reynolds learned that although Wells Fargo had paused his automatic withdrawals, it had not deferred the three monthly payments as requested.  Wells Fargo did not send any warning or delinquency notices to Reynolds until he received a pre-foreclosure notice on September 18th.  (*Id.* ¶¶ 13–14, 17.)

Reynolds asserts that by pausing his automatic withdrawals but failing to defer his monthly payments, Wells Fargo sent the mortgage into payment-missed status.  Wells Fargo further reported the missed payments to the Fair Isaac Corporation (FICO), which lowered Reynolds' FICO credit scores.  As a result, Reynolds' FICO score is "permanently wrongfully impaired," and Reynolds cannot negotiate better mortgage terms with other lenders.  Nor can he set up automatic withdrawal payments to satisfy his future mortgage payments because his account now has a history of default.  Reynolds also alleges that he applied for a home equity line of credit (HELOC) with Wells Fargo, which was denied based on Reynolds' low credit score.  (*Id.* ¶¶ 12, 14–18, 22, 25–26.)

Based on the foregoing, Reynolds asserts claims of breach of contract, fraud, and violations of the FDCPA and FCRA.  He seeks injunctive relief (1) allowing him to pay his monthly mortgage payments into the Registry of Court until the case resolves; (2) finding that Wells Fargo's "manipulation" of his credit score disqualifies Wells Fargo from using that score against him; (3) directing Wells Fargo to grant him the deferment he sought for the months of July, August, and September 2019; (4) directing Wells Fargo to correct the status of those payments so they have no negative effect on Reynolds; (5) "suggesting" that Wells Fargo hire an appraiser to compute Reynolds' equity in the property; and (6) directing that Wells Fargo

approve Reynolds' HELOC application.  Reynolds further seeks court costs and attorney's fees under the FCRA.

## II.  DISCUSSION

### A.  Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), the complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).  A claim is facially plausible if the plaintiff pleads factual content that allows the court to draw a "reasonable inference that the defendant is liable for the alleged misconduct." *Iqbal*, 556 U.S. at 678.  In determining whether the plaintiff has satisfied this plausibility standard, the court must accept as true all well-pleaded facts in the complaint and "draw[] all reasonable factual inferences from those facts in the plaintiff's favor," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), but it need not "accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

The court is generally "limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011)).  It may, however, consider a document attached to a motion to dismiss when the document is "integral to and explicitly relied on in the complaint," and when the document's authenticity is unchallenged. *Id.* at 606 (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)).

Generally, "pro se pleadings are 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted

5

by lawyers.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  But the court's obligation to construe a pro se plaintiff's complaint liberally is supported in part by a pro se plaintiff's lack of legal training or familiarity with the legal system.  *See Polidi v. Bannon*, 226 F. Supp. 3d 615, 616 n.1 (E.D. Va. 2016); *see also Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978) ("In the great run of pro se cases, the issues are faintly articulated and often only dimly perceived.  There is, therefore, a greater burden and correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done.").  Thus, "where, as here, the *pro se* plaintiff is a practicing or former attorney, courts have declined to give liberal construction to the complaint."  *Polidi*, 226 F. Supp. 3d at 616 n.1 (citing cases from a number of jurisdictions that have declined to construe a pro se attorney's pleadings liberally); *see also Gordon v. Gutierrez*, No. 1:06cv861, 2006 WL 3760134, at *1 n.1 (E.D. Va. Dec. 14, 2006) ("Plaintiff represents that she is an attorney, a law school graduate, and a member [of] a neighboring state's bar.  As such, she is not entitled to the liberal construction of pleadings ordinarily afforded *pro se* litigants.").

In his praecipe, Reynolds states that he "took a J.D. degree from the University of Kentucky College of Law in June 1972," and attended one year "in the JD-MBA curriculum jointly sponsored by the Harvard Law School and the Harvard Graduate School of Business." (Dkt. No. 14 ¶ 3.)  He further states that he is "an attorney at law, continuously licensed as such from September 1, 1972, to date," sworn into numerous federal courts, including the United States Supreme Court, Fourth Circuit, and this court.  (*Id.* ¶¶ 4, 9.)  Reynolds asserts that he currently has "live" law licenses in the District of Columbia, Kentucky, and Virginia.  (*Id.* ¶ 10.) Although his Kentucky and Virginia licenses were suspended for nonpayment of bar dues (*id.*, ¶ 11), a search of the D.C. Bar website reveals that Reynolds currently holds an active

6

membership in good standing with the D.C. Bar. Accordingly, Reynolds "is not entitled to the lenient standard afforded typical *pro se* litigants."[5]  *Polidi*, 226 F. Supp. 3d at 616 n.1.

## B. Standing

Wells Fargo first argues that Reynolds lacks standing to bring the claims asserted against it because the Deed of Trust was signed on behalf of the Trust and not in Reynolds' individual capacity. The court acknowledges that Reynolds filed this case in his individual capacity although he executed the 2007 Deed of Trust in his capacity as "Trustee." (Dkt. No. 4-1, at 1, 3.) Reynolds appears to admit this in his complaint by alleging that he entered the mortgage agreement "in his roles as guarantor, maker, and successor trustee for the [Trust]." (Compl. ¶ 2.) However, the court also agrees with Reynolds, to some degree, that this error is generally forgivable and is often correctable by an amended complaint. *See, e.g.*, *Cook v. John Hancock Life Ins. Co. (U.S.A.)*, No. 7:12-cv-00455, 2015 WL 178108, at *5–6 (W.D. Va. Jan. 14, 2015) (acknowledging that the plaintiff trust did not have the capacity to sue on its own behalf but granting leave to file an amended complaint substituting the trustee of the trust as the plaintiff). Moreover, Wells Fargo does not argue that Reynolds would lack standing to enforce the Deed of Trust on behalf of the Trust if he sued in his capacity as trustee. Thus, to the extent Reynolds intended to assert this claim against Wells Fargo as trustee on behalf of the Trust, the court would typically grant Reynolds leave to amend.

Nonetheless, because Reynolds has failed to state a claim, as outlined below, the court finds that such amendment would be futile. *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995) (indicating that granting leave to file an amended complaint may be futile when the "proposed amendments could not withstand a motion to dismiss").

---

[5] As reflected in the analysis below, even if the court were to construe Reynolds' pleadings liberally, it would reach the same conclusion and dismiss his complaint for failure to state a claim.

**C. Breach of Contract**

Count one of Reynolds' complaint attempts to assert a claim for breach of contract against Wells Fargo.  "The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation."  *Filak v. George*, 594 S.E.2d 610, 619 (Va. 2004).  Although somewhat unclear, it appears Reynolds' claim is based on his perceived entitlement to a HAMP loan modification.  But Reynolds fails to plead with the requisite specificity any legally enforceable obligation requiring Wells Fargo to award him a loan modification under HAMP.

Reynolds alleges that "[a] mortgage is a contract, here supplemented by federal regulatory HAMP protections . . . ."  (Compl. ¶ 30.)  He further refers to Wells Fargo pausing his automatic payment withdrawals as "partial performance," which indicates his belief that a contract existed.  But he identifies nothing in the current Deed of Trust or Note that entitles him to a loan modification, and courts have consistently held that the HAMP program alone does not create a right to a loan modification or a right of action for borrowers who are denied such a modification.  *Bourdelais v. J.P. Morgan Chase Bank, N.A.*, No. 3:10CV670-HEH, 2011 WL 1306311, at *3 (E.D. Va. Apr. 1, 2011) (observing that courts have "universally" rejected homeowners' similar claims against lenders "on the ground that HAMP does not create a private right of action for borrowers against lenders and servicers"); *see also Neil v. Wells Fargo Bank, N.A.*, 596 F. App'x 194, 196 n.3 (4th Cir. 2014) (citing *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769 (4th Cir. 2013), for the proposition that "Congress created no private right of action for the denial of a HAMP application").

8

In his response brief, Reynolds argues that he entered a modification with Wells Fargo in 2012 that effectively gave him a permanent enrollment in the HAMP program. He apparently believes that this loan modification gave him an ongoing right to request and receive future loan modifications from Wells Fargo. (Pl.'s Resp. 13–14.) Even in his reply, however, he fails to identify any contract language or statement that would impose such an obligation on Wells Fargo. Rather, he later clarifies that "the modification extended to Reynolds . . . sometime in 2012 *is modifiable again*, for good cause shown." (*Id.* at 15, 16 ("But the HAMP Modification Agreement is in fact ongoing and *revisable* until at least 12/29/2023.") (emphasis added).) Thus, even if the court were to consider the newly alleged facts in Reynolds' response brief, Reynolds has alleged only that his mortgage agreement may be subject to further modification, not that Wells Fargo is bound to grant him such a modification.

The court acknowledges that when a lender determines that a HAMP applicant is eligible for a loan modification and implements a Trial Period Plan (TPP) under the new loan repayment terms, that TPP may constitute an enforceable contract. *Neil*, 596 F. App'x at 196–97. But Reynolds does not allege that Wells Fargo ever agreed to a TPP or loan modification. To the contrary, he has expressly alleged that "he has yet to receive a decision on whether the deferment is to be acknowledged as having been granted." (Compl. ¶ 7.) Reynolds effectively asks the court to find that by meeting Wells Fargo's HAMP criteria and applying for such a modification, he is contractually entitled to such a modification. This would ignore the longstanding contract-law principle of mutual assent, *see Phillips v. Mazyck*, 643 S.E.2d 172, 175 (Va. 2007) ("Until the parties have a distinct intention common to both and without doubt or difference, there is a lack of mutual assent and, therefore, no contract."), and contradict the weight of authority

holding that HAMP does not create an absolute right to a loan modification, *see Bourdelais*, 2011 WL 1306311, at *3.

Likewise, to the extent Reynolds argues that representations made by Wells Fargo during his July 8 conversation created a contract, he has failed to state a claim. For one, Reynolds does not allege that the Wells Fargo representative ever expressly agreed to grant Reynolds a loan modification. He notes that Wells Fargo paused his automatic payments, which he apparently believed was a tacit agreement to grant him a loan modification. However, as stated above, Reynolds also alleges that he still has not received a decision about his application for deferment.

Moreover, as Wells Fargo points out, Virginia's statute of frauds would require Reynolds' loan modification to be in writing. *See* Va. Code Ann. § 11-2; *Lindsay v. McEnearney Assocs., Inc.*, 531 S.E.2d 573, 576 (Va. 2000) ("[I]n certain circumstances written contracts, even those that contain prohibitions against unwritten modifications, may be modified by parol agreement. This principal, however, does not apply to an agreement which must be in writing to satisfy Code § 11-2." (citations omitted)); *see also McInnis v. BAC Home Loan Servicing, LP*, No. 2:11cv468, 2012 WL 383590, at *8 n.5 (E.D. Va. Jan. 13, 2012) ("To the extent Plaintiff is alleging a verbal contract to permanently modify her loan exists, such a contract would be barred in Virginia by the statute of frauds. Plaintiff's first lien mortgage necessarily falls within the statute of frauds as it relates to the purchase of real estate and the contract would not be performed within one year. Consequently, any contract to modify the mortgage lien would also need to be in writing to satisfy the statute of frauds." (citations omitted)). If Reynolds intends to rely upon an oral agreement, the contract fails to satisfy Virginia's statute of frauds and is therefore unenforceable.[6]

---

[6] Wells Fargo also argues that under the terms of the 2007 Note, any modification was required to be in writing. (Dkt. No. 4-2, ¶ 15.) However, the court will decline to address this argument here. Notably, Wells Fargo

Accordingly, Reynolds has failed to allege a contract under which Wells Fargo undertook a legally enforceable obligation to provide Reynolds with a loan modification.[7] Without such an obligation, Reynolds cannot state a claim against Wells Fargo for breach of contract.[8]

## D. Fraud

Reynolds next attempts to assert a claim for constructive fraud under Virginia law.[9] "In Virginia, the elements of a cause of action for constructive fraud are as follows: (1) a false representation of material fact; (2) made innocently or negligently; (3) in such a way as to induce a reasonable person to believe it; (4) with the intent that the person will act upon this

---

attached the 2007 Deed of Trust and Note to its motion to dismiss, but Reynolds alleges that he received a loan modification in 2012 (Dkt. No. 15, at 16). Any loan modification presumably involved Reynolds executing additional or amended documents reflecting the updated terms. But neither party has provided any such documentation. Because the court is unsure whether the 2007 Note and Deed of Trust attached to Wells Fargo's motion represent the most recent agreement between the parties, the court will refrain from considering those documents. Regardless, the language of the 2007 Note, if still binding, would be but one of many roadblocks to Reynolds' action.

[7] Reynolds also alleges that he "was and remains legally entitled to a Home Equity Line of Credit." (Compl. ¶ 28.) To the extent he asserts that Wells Fargo's decision not to grant him a HELOC breached the Note or Deed of Trust, his argument fails for the same reason as his HAMP argument. Simply put, he has not sufficiently alleged any entitlement to a HELOC or any agreement by Wells Fargo to grant such credit.

[8] In his claims for both breach of contract and fraud, Reynolds mentions the implied covenant of good faith and fair dealing. "In Virginia, every contract contains an implied covenant of good faith and fair dealing. However, no implied duty arises with respect to activity governed by express contractual terms. Thus, the covenant of good faith and fair dealing does not preclude a party from exercising valid contractual rights, as long as that party does not exercise those rights in bad faith." *Stansbury v. Fed. Home Loan Mortg. Co.*, No. 7:16-cv-00516, 2017 WL 3821669, at *8 (W.D. Va. Aug. 31, 2017) (citations and quotations omitted) (dismissing a claim for breach of the covenant where the defendants merely exercised their contractual rights). Courts have previously rejected the application of the implied covenant of good faith and fair dealing to cases where a lender fails to consider or grant a loan modification, absent a contractual obligation to the contrary. *Chance v. Wells Fargo Bank, N.A.*, No. 3:12CV320-JRS, 2012 WL 4461495, at *4 (E.D. Va. Sept. 25, 2012). As discussed throughout this opinion, Reynolds has not sufficiently alleged that Wells Fargo acted outside its legal rights under the current Deed of Trust or Note.

[9] Although Reynolds does not distinguish between actual or constructive fraud, he cites *Guarantee Co. of N. Am. v. First Nat'l Bank of Lynchburg*, 28 S.E. 909, 913 (Va. 1898), for the proposition that "[i]f a party innocently misrepresents a material fact by mistake, the effect is the same on the party who is misled by it as if he who innocently made the representation knew it to be positively false." In other words, Reynolds argues that intent to mislead is not required for him to show fraud, which better aligns with the elements of a constructive fraud claim. *See RMA Lumber, Inc. v. Pioneer Machinery, LLC*, No. 6:08-cv-00023, 2009 WL 3172806, at *6 (W.D. Va. Oct. 1, 2009). The court will therefore construe his claim as one for constructive fraud. In either case, Reynolds does not adequately allege misrepresentation or reasonable reliance, which are required for either fraud theory. *Compare id.* (constructive fraud), *with Cohn v. Knowledge Connections, Inc.*, 585 S.E.2d 578, 581 (Va. 2003) (actual fraud).

11

representation; (5) and upon which the injured party relied; (6) to its detriment." *RMA Lumber, Inc. v. Pioneer Machinery, LLC*, No. 6:08-cv-00023, 2009 WL 3172806, at *6 (W.D. Va. Oct. 1, 2009).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Fourth Circuit has held that "the 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1297 (2d ed. 1990)). The plaintiff may rely on general allegations of a defendant's knowledge and intent. Fed. R. Civ. P. 9(b).

Wells Fargo argues that Reynolds has failed to identify a false representation and that any reliance on representations that Wells Fargo would grant Reynolds an oral loan modification is unreasonable. Reynolds does not argue otherwise, instead merely answering, "[s]hould there be any doubt in the Chancellor's understanding that a mature cause for injunctive relief has been viably pled, leave to amend the complaint is grantable."[10] (Pl.'s Resp. 17–18.)

With that, Reynolds again fails to articulate clearly his theory of recovery and leaves the court guessing as to what statements by Wells Fargo he alleges are misleading. The court again presumes that Reynolds relies on his allegations regarding the July 8 conversation and the subsequent pause on his automatic payments. Reynolds alleges that on July 8 he requested deferment of three months' payments "with acknowledgement of the deferment being granted by . . . suspending the July 15th, August 15th, and September 15th autodebits from the Wells

---

[10] The court notes that there is no motion for leave to amend the complaint pending before it, and there is no proposed amended pleading for the court to consider.

Fargo RLT Management checking account." (Compl. ¶ 12 (emphasis added); *see also* Pl.'s Resp. 28.) The court believes that what Reynolds intends to assert here is that he asked Wells Fargo to pause his automatic payments but only if it was also going to grant him a deferment. In his mind, when Wells Fargo suspended his automatic payments, it effectively represented that it would grant Reynolds the deferment he sought.

But Reynolds fails to allege any specifics about this representation as required by Rule 9(b). He identifies the Wells Fargo representative with whom he spoke on July 8, but he does not suggest that any misrepresentation occurred during that conversation. Instead, he states that he "was notified July 11th that the mid-month pulls from the checking account had been paused," and that "he was also induced to believe the deferment . . . w[as] acknowledged and in place." (Compl. ¶ 13.) Thus, to the extent Reynolds alleges that Wells Fargo misrepresented its intent to grant Reynolds' deferment by placing a pause on his automatic withdrawals, the July 11 notice from Wells Fargo is the operative communication. But Reynolds does not specify the contents of the notice or who made the alleged misrepresentations.

Even if the court found that Reynolds pleaded misrepresentation with particularity, Reynolds has not alleged that his reliance was reasonable. Reynolds merely states that "he was induced to believe" Wells Fargo had granted him the deferment. Reynolds does not include allegations sufficient to show that his reliance was reasonable. *See Ostolaza-Diaz v. Countrywide Bank, N.A.*, 360 F. App'x 504, 506 (4th Cir. 2010) ("Failure to plead reasonable reliance is fatal to a common law fraud claim."). Accordingly, Reynolds has failed to state a claim for fraud.

## E.  FDCPA

To state a claim under the FDCPA, the plaintiff must allege that (1) he was a "consumer" and (2) the defendant is a "debt collector" as those terms are defined in the FDCPA.  *Masters v. Harrison & Johnston PLC*, No. 5:17cv00006, 2018 WL 988097, at *3 (W.D. Va. Feb. 20, 2018).  He must further allege that the defendant engaged in an act or omission prohibited by the FDCPA.  *Hardnett v. M&T Bank*, 204 F. Supp. 3d 851, 859 (E.D. Va. 2016).  Reynolds has not sufficiently alleged that Wells Fargo is a debt collector that engaged in prohibited action.[11]

### 1.  "Debt Collector"

Under the FDCPA, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).  Importantly, the FDCPA does not prohibit a lender from collecting a debt on its own behalf and creates an exception to liability for "any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control." 15 U.S.C. § 1692a(6)(B); *see Soriano v. Wells Fargo Bank, N.A.*, No. 11-00044 SOM/KSC, 2013 WL 310377, at *4 (D. Haw. Jan. 25, 2013).  The question, then, is whether Wells Fargo's principal purpose is the collection of debt or whether it regularly collects debts owed to others.  Reynolds' complaint is silent as to either.

---

[11] Wells Fargo also contends that Reynolds has failed to allege that he is a "consumer."  It appears to argue that because the property is owned by the Trust as a rental property, the mortgage constitutes a business, not consumer, debt.  The court notes, however, that Reynolds argues he is an intended beneficiary of the Trust and that the property is also used as his principal residence.  While Wells Fargo's argument is well taken, the court need not resolve this issue here because Reynolds has failed to satisfy the remaining elements of his FDCPA claim.

14

Reynolds begins by alleging that Wachovia Bank executed the mortgage before "the Defendant" purchased Wachovia. But nowhere in his complaint does Reynolds allege that a different entity now owns the debt or attempts to collect debt for Wells Fargo. In his response, Reynolds latches onto the parties' disagreement over whether Wells Fargo Home Mortgage or Wells Fargo, N.A. should be the proper defendant. But that makes little difference here because, regardless of who Reynolds sues, he has nonetheless failed to allege that a different entity is collecting the debt. Whether the court substituted Wells Fargo Home Mortgage or Wells Fargo, N.A. for "the Defendant," it would not change the substance of Reynolds' complaint, which alleges only that "the Defendant" both owns and collects the debt.

In his response, Reynolds further questions whether one Wells Fargo division may have set out to collect a debt for a separate division. (Pl.'s Resp. 18 ("Did a loan servicer in one sibling division act as the debt collector for another sibling division here? If so, did that occurrence render the debt collector a third-party vis-à-vis the other?").) But his response amounts to just that—questions, speculation, and uncertainty. He still does not assert that separate entities are involved here. Instead, his response amounts to an admission that, as yet, he does not know whether he can state a claim for relief under the FDCPA.[12]

Additionally, while Reynolds has not alleged sufficient information for the court to determine whether Wells Fargo Home Mortgage might be a "debt collector" for Wells Fargo Bank, N.A., it is notable that at least one other court has rejected this argument. *Soriano*, 2013 WL 310377, at *4 ("Wells Fargo Home Mortgage merged into Wells Fargo Bank and has been a

---

[12] Reynolds suggests that "[t]hese are questions of fact and law so disputed as to compel the 12(b)(6) motion to be denied." (Pl.'s Resp. 18.) However, that is not the standard the court applies to a motion under Rule 12(b)(6). As stated above, the question is not whether there is a dispute of fact, but whether the plaintiff's allegations, taken as true, state a plausible claim to relief. Because Reynolds has not alleged the key elements of a claim under the FDCPA, he has simply failed to meet his pleading burden in this case.

15

wholly owned division of Wells Fargo Bank's since May 8, 2004.  To the extent Soriano is asserting an FDCPA claim . . . her claim fails because Wells Fargo Bank . . . is not a 'debt collector' within the ambit of the FDCPA." (citations omitted)).

### 2. Prohibited Action Under the FDCPA

Additionally, Reynolds has failed to allege any wrongdoing actionable under the FDCPA. Reynolds cites to §§ 1692e and 1692f in his complaint.[13]  Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  Specifically, Reynolds relies on the FDCPA's limitations on the use of any "false representation of . . . the character, amount, or legal status of any debt," "threat to take any action that cannot legally be taken," or "use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval."  15 U.S.C. §§ 1692e(2), (5), (9).

As with his other claims, Reynolds' disorganized and meager complaint is woefully unclear regarding how he intends to apply these provisions to his interactions with Wells Fargo. The court has already concluded that Reynolds has failed to allege that Wells Fargo agreed to grant Reynolds a loan modification.  Yet Reynolds acknowledges that he nonetheless failed to make payments for the months he sought to defer.  Reynolds does not sufficiently allege that any language in the current Note or Deed of Trust required Wells Fargo to grant Reynolds a loan modification or prevented Wells Fargo from attempting to collect unpaid mortgage payments or instituting pre-foreclosure proceedings in the event of default.  Reynolds fails to identify how

---

[13] Reynolds also cites § 1692h, which governs how a debt collector may apply payments to disputed debts. Reynolds does not mention any misapplied payments.  Thus, it is unclear how he intends this language to apply.

16

Wells Fargo violated § 1962e and has therefore failed to state a plausible claim to relief under this section.

For the same reason, Reynolds' reliance on § 1692f must also fail. Section 1692f prohibits "the collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Reynolds fails to allege that Wells Fargo has attempted to collect any amount other than the amount due under the current Note. By its pre-foreclosure notice, Wells Fargo presumably attempted to collect the monthly payments for the three months Reynolds sought to obtain a deferment. Because Wells Fargo did not grant Reynolds a loan modification, it was entitled to attempt to collect the missed payments. Accordingly, Reynolds has failed to state a claim under the FDCPA.

## F. FCRA

Finally, Reynolds asserts a claim under the FCRA. "The FCRA, in relevant part, prohibits a person from providing inaccurate information 'relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.'" *Lovegrove v. Ocwen Home Loans Servicing, L.L.C.*, 666 F. App'x 308, 313 (4th Cir. 2016) (quoting 15 U.S.C. § 1681s-2(a)(1)(A)). As relevant here, the FCRA further governs the duties of persons taking actions based on information contained in consumer credit reports. *See* 15 U.S.C. § 1681m.

Reynolds asserts that Wells Fargo violated both §§ 1681m and 1681s-2(a)(7)(A)(i). As Wells Fargo points out, however, neither provision creates a private right of action for consumers like Reynolds. Section 1682m expressly states that it does not create a civil right of action and limits enforcement instead to actions by federal agencies and officials. *Id.* § 1681m(h)(8).

17

Similarly, courts have found that "[t]here is no private right of action under § 1681s-2(a)."[14] *Lovegrove*, 666 F. App'x at 313; *see also Beattie v. Nations Credit Fin. Servs. Corp.*, 69 F. App'x 585, 589 (4th Cir. 2003) (noting that § 1681s-2(a)(1)(A) "may be enforced only by federal and state agencies and officials"). Thus, Reynolds has failed to state a claim under the FCRA.

### III.  CONCLUSION

For the reasons stated above, the court will GRANT Wells Fargo's motion to dismiss (Dkt. No. 3) and DENY AS MOOT Reynolds' motion for a more definite statement (Dkt. No. 9), praecipe (Dkt. No. 14), judicial notice motion (Dkt. No. 18), and motion to seek a loan guarantee (Dkt. No. 20).

Entered: July 14, 2020.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge

---

[14] The court acknowledges that while § 1681s-2(a) does not create a private right of action, § 1681s-2(b) does. However, to state a claim under subsection (b), the plaintiff must allege: "(1) that he notified a consumer reporting agency that he disputed the accuracy of information in his consumer report; (2) that the consumer reporting agency notified [the defendant] of Plaintiff's dispute; and (3) that [the defendant] failed to adequately investigate after receiving the notice from the consumer reporting agency." *Rossman v. Lazarus*, No. 1:08cv316 (JCC), 2008 WL 4181195, at *7 (E.D. Va. Sept. 3, 2008); *see also Hoback v. Synchrony Bank*, No. 6:19-cv-18, 2019 WL 2438794, at *2 (W.D. Va. June 11, 2019) ("The private right of action available to a consumer under the FCRA arises under § 1681s-2(b) once that consumer disputes incorrect information with a [credit reporting agency] and that [credit reporting agency] informs the furnisher."). Reynolds has not alleged that he disputed the accuracy of Wells Fargo's reporting with a credit reporting agency or that a credit reporting agency ever informed Wells Fargo of such a dispute. As a result, Reynolds cannot maintain an action under § 1681s-2(b).